STATE, RESPONDENT, *v.* VANELLA, APPELLANT.

(No. 2,740.)

(Submitted December 17, 1909. Decided January 7, 1910.)

[106 Pac. 364.]

*Criminal Law—Homicide—Depositions—Constitutional Guaranties — Waiver — Evidence—Admissibility—Instructions—Motive—Harmless Error.*

Criminal Law—Depositions—Manner of Taking—Presumptions.
   1. In the absence of an objection to the use of a deposition in a criminal prosecution, it will be presumed on appeal that it was taken in the manner prescribed by the statute.

Same—Depositions—Defendant—Constitutional Guaranties—Meeting Witnesses Face to Face—Waiver.
   2. The rights guaranteed by the Constitution to one accused of crime fall into two classes: (a) those in which the state, as well as the accused, is interested—which cannot be waived, and (b) those which are personal to defendant, and these he may waive. Into the latter category falls the right to meet the witnesses against him face to face. *Held*, that where the deposition of a witness was taken before a notary public, by stipulation of counsel, and used on the trial without objection, defendant waived the right to be confronted by the witness.

Same—Depositions—Objections—Waiver.
   3. Where defendant failed to object to the use of depositions on the ground that the witness had not been shown to be dead or absent from the state at the time of the trial, he waived the right to insist that such showing should have been made.

Same—Depositions—Presence of Defendant—Record.
   4. The statute does not declare or imply that the officer before whom the deposition of a witness in a criminal cause is taken, shall keep a record of the proceeding or recite the fact that defendant or his counsel was present; therefore the record on appeal need not show affirmatively that defendant was present when the deposition was taken.

Same—Constitutional Guaranties—Waiver—Burden of Proof.
   5. The right of defendant to be present at the taking of a deposition is not an absolute one (Const., Art. III, sec. 17), but a privilege which he may waive; and the burden is upon him to show that he was not present, or was not given an opportunity to be present, before he can complain.

Homicide—Identification—By Voice—Opinion Evidence—Competency.
   6. A witness for the state, who had known defendant for two weeks prior to the commission of the homicide with which the latter stood charged, was properly permitted to state that he recognized defendant, who, while running through a hallway, had addressed certain remarks to witness; and the competency of such testimony was not affected by the uncertain term, "I think," used by the witness in expressing his opinion.

Same—Nervousness of Defendant—Evidence—Competency.

7.   The testimony of a witness that on the morning of the homicide, when defendant called at his place of business, he (defendant) "was very nervous," though in the nature of a conclusion, revealed the impression made upon his senses by the appearance of defendant, was a statement of fact within his own knowledge, and therefore competent.

Same—Nervous Temperament of Defendant—Evidence—Incompetency.

8.   One who had known defendant but little over one day prior to the commission of the homicide for which he was on trial, was incompetent to testify that accused was of a nervous temperament; to make testimony of this character admissible, the witness must have known or observed the party for a sufficient time to enable him to form a conclusion as to his disposition.

Same—Evidence—Appeal—Harmless Error.

9.   Where a witness for the prosecution had made a statement in reply to a question asked on cross-examination, counsel for accused was in no position to complain of a ruling of the court permitting the witness to make substantially the same answer to a question on redirect examination.

Same—Exclusion of Evidence—Prejudice—Presumptions.

10.   Where the purpose of a question asked a state's witness on cross-examination was not apparent and was not explained, and the brief of accused on appeal did not indicate wherein he was prejudiced by the sustaining of an objection to the question, the court on appeal will not assume that he was prejudiced.

Same—Information—Time of Commission of Offense—Instructions.

11.   In a prosecution for homicide, where all the evidence showed that, if committed at all, the offense was committed on the day alleged in the information, the court, in charging the jury that it was not necessary that the homicide should have been committed on the precise date laid in the pleading, but that if it appeared that it had been committed prior to the filing of the information it was sufficient, did not err.

Same—Instructions—Assumption of Fact—Harmless Error.

12.   An instruction that "while in the information it is alleged that the crime was committed," on a certain day, "yet if you find  *  *  * that *the crime* was committed," etc., cannot be said to have been an assumption of the fact that the offense had been committed, because of the omission of the word "alleged," qualifying the word "crime" (italicized above); the latter word was to be considered with that portion of the instruction immediately preceding it, to which it referred, and the jury could not have been misled to defendant's prejudice.

Same—Manslaughter—Instructions—Nonprejudicial Error.

13.   One charged with murder in the first degree and convicted of murder in the second degree may not complain of instructions on voluntary and involuntary manslaughter, even though inapplicable to the facts in the case.

Same—Instructions—Repetition.

14.   Refusal of an instruction, the subject matter of which was fully covered by other portions of the charge, was not error.

Same—Instructions—Modification—Objections—Exceptions—Review.

15.   The record not showing that defendant objected and saved an exception to the modification of an instruction offered by him, so as to make the action of the court reviewable under subdivision 4, sec-

tion 9271, Revised Codes, he will not be heard on appeal to complain of the alleged error.

Same—Evidence—Motive—Correct Instruction.

16. The court properly modified defendant's requested instruction, which told the jury that absence of motive to commit the crime charged against accused should be considered a circumstance "in favor of his innocence," by substituting the words, "which you should consider." The state is not required to prove motive, but its presence or absence is to be considered as any other evidentiary fact bearing upon the ultimate question of the guilt or innocence of the defendant.

Same—Evidence—Refusal to Strike—Nonprejudicial Error.

17. While the trial court should have stricken those portions of a deposition which had been volunteered by the witness and were not at all responsive to the questions propounded, error in this regard was not sufficient to justify a reversal where the testimony thus volunteered was of no consequence to the state nor detrimental to the defendant. Under sections 9415, 9548, Revised Codes, a judgment of conviction may not be reversed unless the error prejudiced, or tended to the prejudice of, defendant.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ROBERT VANELLA was convicted of murder in the second degree, and from the judgment and an order denying his motion for a new trial, he appeals. Affirmed.

*Mr. O. W. McConnell,* submitted a brief in behalf of Appellant, and argued the cause orally.

The evidence is insufficient to support the verdict. There is no direct testimony that defendant committed the murder, and, as held in *Territory* v. *Rehberg,* 6 Mont. 467, 13 Pac. 132, in such a case and where the circumstances do not point to him, more than to several others present and capable of committing it, as its perpetrator, the evidence is insufficient and a new trial should be granted. (See, also, *State* v. *Foster,* 26 Mont. 72, 66 Pac. 565; *State* v. *Welch,* 22 Mont. 92, 55 Pac. 927.)

There is no provision in the Codes for the taking of a deposition in a criminal case against a defendant by stipulation. The use of a deposition against a defendant in a criminal case being in derogation of his constitutional right, the mode provided by law in which such deposition may be taken must be strictly construed and followed. (*People* v. *Morine,* 54 Cal. 575; *People* v. *Mitchell,* 64 Cal. 85, 27 Pac. 862; *People* v.

*Ward,* 105 Cal. 656, 39 Pac. 33; *Willard* v. *Superior Court,* 82 Cal. 466, 22 Pac. 1120.) The deposition must be taken in the presence of the accused and his counsel, and then the deposition can only be read when it is shown that the witness is dead or absent from the state. In the case of *Motes* v. *United States,* 178 U. S. 458, 20 Sup. Ct. 993, 44 L. Ed. 1150, it was held that the right of the accused to be confronted with the witnesses against him was violated by permitting a deposition of an absent witness, taken at an examining trial, to be read at the final trial. See, also, in support of the proposition that the defendant shall confront the witnesses face to face, the following cases: *State* v. *Thomas,* 64 N. C. 74; *Anderson* v. *State,* 89 Ala. 12, 7 South. 429; *State* v. *Chambers,* 44 La. Ann. 603, 10 South. 886; *People* v. *Restell,* 3 Hill (N. Y.), 289; *Goodman* v. *State,* 19 Tenn. (Meigs) 197; *Bergen* v. *People,* 17 Ill. 426, 65 Am. Dec. 672; *United States* v. *Angell,* 11 Fed. 34.

May the attorney for the defendant by stipulation waive the constitutional right of the accused, thereby depriving him of its benefit? We think not. The privileges and rights conferred upon the defendant are rights that he cannot waive. (See *State* v. *Mannion,* 19 Utah, 505, 75 Am. St. Rep. 753, 57 Pac. 542, 45 L. R. A. 639; *Hopt* v. *People,* 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; *Lewis* v. *United States,* 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011.) The defendant cannot waive being present at all stages of the trial, and the taking of testimony is one of the stages of the trial. (*Jackson* v. *Commonwealth,* 19 Gratt. (Va.) 656; *State* v. *Myrick;* 38 Kan. 238, 16 Pac. 330; *Shipp* v. *State,* 11 Tex. App. 47.) Neither the county attorney nor defendant's attorney could stipulate for the production of testimony upon the trial in a mode different from what the law provides for. (*Cancemi* v. *People,* 18 N. Y. 128; see, also, *Bell* v. *State,* 2 Tex. App. 221, 28 Am. Rep. 429.) There is nothing to show that the defendant was even present at the time of the taking of the depositions which were used against him. The record must affirmatively show the presence of the accused. (*Douherty* v. *Commonwealth,* 69 Pa. 286; *Lewis* v. *United States, supra.*)

An instruction which assumes as a fact that a public offense was committed, when that is one of the issues in the case, is erroneous. (*Hillyer* v. *People,* 186 Ill. 550, 58 N. E. 245; *People* v. *Lee Chuck,* 74 Cal. 30, 15 Pac. 322; *People* v. *Welch,* 49 Cal. 181; *Ward* v. *United States,* 14 Wall. 29, 20 L. Ed. 792; *State* v. *Harrington,* 12 Nev. 125; *Snyder* v. *State,* 59 Ind. 105; *Moore* v. *State,* 65 Ind. 382; *Kidd* v. *State,* 83 Ala. 58, 3 South. 442; 21 Cyc. 1034.)

Opinion evidence as to identification of accused or of his voice is incompetent; a witness may testify he knows it was the accused because he recognized his voice, but not that he thinks it was his voice. (Underhill on Evidence, secs. 55, 56; *People* v. *Williams,* 29 Hun, 520; *Watson* v. *Colusa Parrot Co.,* 31 Mont. 522, 79 Pac. 14; Revised Codes, sec. 7862.)

Where the question is whether the defendant was guilty of the homicide charged, it is proper to prove any facts tending to show motive or want of motive for the killing of deceased by defendant. (McClain on Criminal Law, sec. 416.)

For the State there was a brief by *Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General. Oral argument by *Mr. Galen.*

What was done with reference to the taking of the depositions was voluntarily done by both parties. No objection was raised, and no ruling was made. The trial court was not given an opportunity to pass upon the question as to the admissibility of the depositions. A trial court may not be reversed for a ruling which was not made, nor can the admissibility of evidence be raised for the first time in the appellate court (*Thornton-Thomas Co.* v. *Bretherton,* 32 Mont. 80, 80 Pac. 10); nor may a trial court be put in the position of committing error because of the admission of certain evidence not objected to when the exclusion of the same evidence would also have been error. (*Yoder* v. *Reynolds,* 28 Mont. 183, 72 Pac. 417, and cases cited; *State* v. *McCarthy,* 36 Mont. 226, 92 Pac. 521; *People* v. *Murray,* 52 Mich. 288, 17 N. W. 843.) The

state, with the consent of the defendant, may take depositions for use in the prosecution even though there is no statute authorizing the taking of depositions. (*Wightman* v. *People*, 67 Barb. (N. Y.) 44; *State* v. *Bowen*, 4 McCord (S. C.), 254; 13 Cyc. 846, note 53.) This entire question of the constitutional rights of the defendant is so thoroughly discussed in a recent decision by the supreme court of Utah that we adopt that decision as our argument herein. (*State* v. *Mortensen*, 26 Utah, 312, 73 Pac. 562, 633.) The supreme court of Washington has recently held that a defendant may, by stipulation, waive his constitutional right to have the witnesses produced against him. (*State* v. *Lewis*, 31 Wash. 75, 71 Pac. 778; see, also, Wharton's Criminal Pleading and Practice, 9th ed., sec. 595; *State* v. *Wagner*, 78 Mo. 644, 47 Am. Rep. 131; *Hancock* v. *State*, 14 Tex. App. 392.) Appellant waived that right in this case by his ante-trial agreement. In Missouri it is held that where the defendant in a criminal prosecution, in order to avoid a continuance, consents that a written statement presented by the prosecuting attorney, as .containing testimony of absent witnesses, shall be read to the jury as and for their testimony, he thereby waives his constitutional right to meet the witnesses against him face to face. (*State* v. *Wagner*, 78 Mo. 644, 47 Am. Rep. 131; *Collins* v. *Commonwealth*, 24 Ky. Law Rep. 884, 70 S. W. 187; *United States* v. *Sacramento*, 2 Mont. 239, 25 Am. Rep. 742; 12 Cyc. 545, note 90.)

In homicide cases it is not necessary to allege the precise time in any case except where the time is a necessary ingredient of the offense. (Revised Codes, sec. 9152; *State* v. *Thompson*, 10 Mont. 549, 27 Pac. 349; *People* v. *Squires*, 99 Cal. 327, 33 Pac. 1092; *State* v. *Harp*, 31 Kan. 498, 3 Pac. 432; *State* v. *Sammons*, 95 Ind. 24; *People* v. *Kelley*, 6 Cal. 210; *State* v. *Elliot*, 34 Tex. 148.)

It is fundamental that the conduct, declarations and general demeanor of the accused, either before or after the crime, and his language, his attitude and his relations toward the crime, his flight or concealment, and his general behavior and demeanor, are proper evidence. (12 Cyc. 394, 395, and notes.)

These general principles have been many times sustained by this court. (*State* v. *Lucey*, 24 Mont. 295, 61 Pac. 994; *State* v. *Biggerstaff*, 17 Mont. 510, 43 Pac. 709; *State* v. *Tighe*, 27 Mont. 327, 71 Pac. 3.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Robert Vanella was convicted of murder in the second degree, and appeals from the judgment and from an order denying him a new trial.

1. It is urged that the defendant was deprived of his right to meet the witnesses against him face to face, and that the provision of the Constitution (Article III, sec. 16) was thereby violated. Upon the trial the deposition of each of two witnesses for the state was read in evidence against the defendant. That the right secured to the accused by the provision of the Constitution above is not an absolute one is determined by the next succeeding section, wherein provision is made for taking and using the deposition of a witness in a criminal case. But it is earnestly urged that to warrant the use of such a deposition it must have been taken in the manner prescribed by the Penal Code (sections 9494-9504, Revised Codes). The record does not show whether the deposition of the witness James Lauratz was or was not taken as the law requires; and, in the absence of any objection to the use of it, we do not deem it necessary that such fact should appear. This court will not presume that error was committed.

The record, however, does disclose that the deposition of the witness Tony Rose was taken by stipulation, before a notary public; and the attorney general insists that, having been taken by stipulation and used without objection, the defendant waived the right to insist that it should have been taken as the statute prescribes. To this counsel for defendant replies that the right of the defendant to meet the witness against him face to face, except where a deposition used has been taken as prescribed by law, is one which neither the defendant nor his

counsel can waive; and in support of this view the following, from *State* v. *Mannion*, 19 Utah, 505, 75 Am. St. Rep. 753, 57 Pac. 542, 45 L. R. A. 638, is quoted: "That which the law requires and makes essential in the trial of persons accused of a felony cannot be dispensed with, either by the consent of the accused or by his failure to object to unauthorized methods pursued by those in authority." We fully agree with this as an abstract principle of law, and of its proper application to the facts of that particular case, where the defendant was ordered out of the presence of a witness who was testifying against him, and out of the presence of the jury while his trial was proceeding.

The interest of the state in the life of every citizen extends to one who is on trial for a capital offense, and therefore it is a principle of law, recognized everywhere, that after indictment returned or information filed, nothing shall be done by the court in the case in the absence of the accused. (*Lewis* v. *United States*, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011.) And the courts are quite unanimous in holding that the right of the accused to be present at all times during his trial is one which the state does not permit to be waived. The jurisdiction of the court to try the accused is derived from the law, and the consent of the accused cannot confer jurisdiction if the court does not have it; and therefore the right of the defendant to be tried by a court having jurisdiction is one which is not waived by failure to make objection at the trial. It is to rights of the character of these that the principle quoted above is applicable. In other words, the rights guaranteed to one accused of crime fall naturally into two classes: (a) Those in which the state, as well as the accused, is interested; and (b) those which are personal to the accused, which are in the nature of personal privileges. Those of the first class cannot be waived; those of the second may be. That the supreme court of Utah never intended its declaration quoted above to be invoked in behalf of every constitutional guaranty in favor of the accused is demonstrated by the later decision in *State* v. *Mortensen*, 26 Utah, 312, 73 Pac. 562, 633, where the question

now before us was fully considered and decided with reference to a constitutional provision identical with that contained in section 16, Article III, above. In this last case counsel for the defendant and the state stipulated in open court that, if an absent witness were present, he would testify to certain facts, which were recited to the jury. Upon appeal after conviction the accused invoked the constitutional provision that he should have confronted the witness, but the court said: "Upon examination it will be noticed that the right of the accused to be confronted by the witnesses against him, secured by the constitutional provision above referred to, falls within the class personal to the accused. It is a personal right, a personal privilege of which every defendant in a criminal proceeding may avail himself. It is limited to criminal prosecutions, and in no way affects the jurisdiction of the court to try the cause or to pass a valid judgment." The authorities are reviewed at great length by the Utah court, and the conclusion is reached that the defendant waived the right insisted upon. A reference to the foregoing decision will suffice here.

In this present case the depositions were used without objection. The trial court was not called upon to rule, and did not make any ruling, and we are therefore somewhat at a loss to know what we are to review, unless it be the nonaction of the trial court in failing to volunteer and interpose its objection to the use of the depositions.

It appears from the record, also, that by stipulation the deposition of a witness for the defendant was taken and used by him. In *People* v. *Murray*, 52 Mich. 288, 17 N. W. 843, this same question came before the supreme court of Michigan, and in an opinion by Judge Cooley, concurred in by Chief Justice Campbell and Judge Graves, the matter was disposed of by the learned members of that court as follows: "A chief ground of error relied upon is that the prosecution was allowed to put in evidence certain depositions, taken out of court, of witnesses not present at the trial. The facts seem to be that the attorneys for the respective parties stipulated to put in certain depositions on both sides, and they were put in ac-

cordingly. This, it is said, was in violation of the respondent's constitutional right to be confronted with his witnesses. But the court made no ruling in the matter; what was done was voluntarily done by the parties; the defendant had the benefit of the stipulation, and for aught we can know, it may have been made chiefly in his interest. But however that may be, when the court has made no ruling, we can have nothing to review. This court cannot relieve a party from a criminal conviction because of his own voluntary action on the trial. * * * The defendant undoubtedly had a constitutional right to be confronted with his witnesses. He waived that right in this case, apparently for his own supposed advantage, and to obtain evidence on his own behalf. It would have been a mere impertinence for the court to have interfered and precluded this stipulation being acted upon. But it would have been more than an impertinence; it would have been gross error. And it would be palpable usurpation of power for us now to set aside a judgment for a neglect of the court, not at the time complained of, but in respect to something where any other course would have been plain error. Under the view taken by the respondent, it would seem that when the evidence had been obtained under his stipulation, the court was put in position where it was impossible to avoid error; for if the evidence was received, he might complain, as he does now, that his constitutional right was violated, and if the court refused to receive it when he was consenting, the respondent would be entitled to have the conviction set aside for that error. I shall always be ready to preserve in its integrity every constitutional right; but I do not understand that the Constitution is an instrument to play fast-and-loose with in criminal cases any more than in any other, or that it is the business of courts to be astute in the discovery of technical difficulties in the punishment of parties for their criminal conduct.'' In the Utah and Michigan cases the defendant in each instance was convicted of a capital offense and the judgment of conviction was affirmed.

Section 16, Article III, of the Constitution, which is here invoked, contains a number of provisions similar to the one spe-

cifically relied upon: (a) The accused shall have the right to appear and defend in person and by counsel; but, if he declines counsel, and prefers to make his own defense, could it be asserted seriously that his constitutional right had been violated? (b) He has the right to have process to compel the attendance of witnesses in his behalf; but, if he does not demand the process, he cannot complain. (c) He has the right to a trial; but he may plead guilty, and obviate the necessity of a trial. (d) He is entitled to a trial by an impartial jury; but, if on the *voir dire* examination a juror discloses that he is not impartial, and the accused fails to challenge him, can he complain after verdict against him? Section 18, of the same Article, provides: "No person shall be compelled to testify against himself in a criminal proceeding"—but if the accused goes upon the witness-stand in his own behalf, he is subject to all proper cross-examination, even though in such cross-examination he may be compelled to incriminate himself. These provisions, and the one relied upon now, are clearly intended for the protection of the accused. They are rights personal to himself, or privileges granted to him. He is entitled to counsel if he asks such assistance, but he is not compelled to have it. He is entitled to process to compel the attendance of his witnesses, but it is for him to say whether he shall exercise the privilege thus accorded him. He is entitled to a trial, but he is not compelled to have one—he may plead guilty. He is insured a trial by an impartial jury if he exercises the challenges allowed him by law—not otherwise. It is his privilege to stay off the witness-stand, and thereby avoid any inconvenience from cross-examination; but, if he does not exercise the privilege, he cannot complain that he was compelled to give testimony which otherwise he would not have given. He is entitled to meet the witnesses against him face to face, if he insists upon it. In other words, these are rights which he may invoke. They are for his benefit, and, if he insists upon them, they cannot be denied him (*State* v. *Lee*, 13 Mont. 248, 33 Pac. 690), but, being in the nature of privileges, he may waive them; and, the defendant in this instance having done so, he cannot now complain.

(*State* v. *Lewis,* 31 Wash. 75, 71 Pac. 778; *Hancock* v. *State,*
14 Tex. App. 392; *State* v. *Wagner,* 78 Mo. 644, 47 Am. Rep.
131.)

2. What we have just said disposes of the contention that
there was not any showing made that the witnesses whose dep-
ositions were used were dead or absent from the state at the
time of the trial. By failing to object to the use of the deposi-
tions the defendant waived the right to insist that such show-
ing should have been made.

3. Again it is urged that the record does not show that the
defendant was present when the depositions were taken. In
*Lewis* v. *United States,* above, it is said: "And it appears to be
well settled that, where the personal presence [of the defend-
ant] is necessary in point of law, the record must show the
fact." There cannot be any doubt of the correctness of this
rule, but it is not applicable to the facts here. Our Constitu-
tion provides, in section 17, Article III, above, for the taking
of depositions upon notice. It provides that such depositions
shall be taken in the presence of the accused and his counsel
"or without their presence, if they shall fail to attend." So
that the right to be present is not an absolute one, nor is such
presence indispensable. Furthermore, the same section pro-
vides that such depositions shall be taken in the manner pre-
scribed by law. There is not any limitation as to the time
when they may be taken, and sections 9494 and 9495, Revised
Codes, at least imply that they may be taken at any time after the
defendant has been held to answer the charge, even before an
information has been filed against him. This record does not
disclose when these depositions were taken, but it does disclose
that the deposition of the witness Tony Rose was taken before
a notary public. It is not asserted that the defendant was not
in fact present when the deposition was taken, but it is in-
sisted that it does not appear affirmatively that he was present.
When proceedings are had in court, it is the duty of the clerk,
if it be a court of record, or of the justice of the peace, if not
a court of record, to record the proceedings thus had; but in
taking a deposition the law neither declares nor implies that the

official before whom the deposition is taken shall recite that the defendant or his counsel was present, and such official is not required to keep any record of the proceeding. His duty is limited to taking and certifying the deposition; and, if he should certify that the defendant was present, it would be but an extrajudicial declaration, not binding on anyone. It is scarcely possible, then, to make the record show the presence of the defendant at the time the deposition is taken; and, since the right to be present is but a privilege granted him, we think the burden is upon him to show that he was not present, or was not given an opportunity to be present, before he can complain.

4. A witness for the state, Louis Fava, testified that he was in his room across a hallway from the room in which the homicide was committed, at the time of the killing; that immediately after the fatal shot was fired he opened the door of his room, and someone, running in the hallway from him, said: "Go on; get in, and look out." The witness continued: "I am not sure it was Vanella talking to me; I can't say. I am not sure. I think it was his voice." The presiding judge then asked: "You think it was whose voice?" This was objected to as incompetent, and the objection was overruled. It is now insisted that a witness may not give his opinion upon a question of this character. The testimony theretofore given by the witness fully answered the inquiry of the trial judge; and it would seem that the question must have been asked for the information of the judge, rather than that the answer should go to the jury. But, however, this may be, we do not find any error in the ruling. Section 7862, Revised Codes, provides: "A witness can testify to those facts only which he knows of his own knowledge; that is, which are derived from his own perceptions, except in those few express cases in which his opinions or inferences, or the declarations of others, are admissible." Since this is not one of the few express cases mentioned in the Codes, in which an opinion may be given, it is insisted that the evidence was incompetent. Generally speaking, a witness is limited to the statement of such facts as are made known to him through his own senses. This is the meaning of the statute. While per-

sonal identification is most commonly made by one who has seen the person identified, that means is not exclusive. That one may be identified by his voice is now generally held by the authorities. (3 Rice on Evidence, sec. 302; 1 Wigmore on Evidence, sec. 660; *Commonwealth* v. *Williams,* 105 Mass. 62; *Ogden* v. *People,* 134 Ill. 599, 25 N. E. 755; *State* v. *Hopkirk,* 84 Mo. 278.) The rule was recognized in *State* v. *Hurst,* 23 Mont. 484, 59 Pac. 911. The mere form of the answer is immaterial. If the circumstances show that the witness is giving the result of the impression made upon his senses, he is stating a fact within his own knowledge, however clumsily he may express himself.

The witness Fava was an Italian, who spoke the English language very imperfectly; but the record discloses that he had known the defendant for two weeks before the homicide. To use his own language: "I had talked with Vanella before this time. I was acquainted with Vanella; he was around there all the time; we saw him every day, and they saw him every day. Sometimes they eat at my house, and sometimes I eat at his house." In answer to the question propounded the witness said: "I think it was Vanella; it was his voice there at that time; I think it was." The uncertain terms in which this evidence was given may affect its weight but not its competency. (*Deal* v. *State,* 140 Ind. 354, 39 N. E. 930.) In Underhill on Criminal Evidence, section 55, it is said: "Indeed, even if it be conceded that identity is a fact, the answer should hardly be rejected because the witness is not positive of the identity of the accused beyond all doubt; or, because, through excessive caution, he qualifies his answers by such expressions as 'I think,' or 'I believe.' Witnesses cannot be required to state all facts with equal positiveness." In *People* v. *Rolfe,* 61 Cal. 540, the supreme court of California disposed of the question now before us, as follows: "The objection that the witnesses did not positively and beyond a doubt identify the defendant cannot be sustained. They expressed *the belief* that he was the person they had seen; and, although their evidence was given with great caution, it was sufficiently certain respecting the identity of the

defendant to go to the jury, and it was for the jury to say what weight it was entitled to.''

5. W. R. Westbrook, a witness for the prosecution, was permitted to state, over objection, that on October 12, the morning after the homicide, when the defendant called at Westbrook's place of business, ''the young man was very nervous.'' It is said that this was merely an opinion by the witness, but with this we do not agree. It is true that it is in the nature of a conclusion drawn by the witness. His statement reveals the impression made upon his senses by the appearance of the defendant. In *State* v. *Baldwin,* 36 Kan. 1, 12 Pac. 323, it is well said: ''Facts which are made up of a great variety of circumstances, and a combination of appearances which, from the infirmity of language, cannot be properly described, may be shown by witnesses who observed them; and, where their observation is such as to justify it, they may state the conclusions of their own minds. In this category may be placed matters involving magnitude or quantities, portions of time, space, motion, gravitation, value, and such as relate to the condition or appearance of persons and things. (*City of Parsons* v. *Lindsay,* 26 Kan. 426; *State* v. *Folwell,* 14 Kan. 105.) On the same principle the emotions or feelings of persons—such as grief, joy, hope, despondency, anger, fear, and excitement—may be likewise shown, and hence the testimony objected to was properly admitted. (Lawson on Expert Evidence, rule 64; 2 Best on Evidence, sec. 517.)''

6. Complaint is made that the court, having permitted the witness Westbrook to testify that the defendant was nervous, then refused to permit the defendant to prove, by the witness Burla, that the defendant was naturally of a nervous temperament, and this evidently for the purpose of showing that the defendant's nervousness on October 12, was his normal condition. While a witness might properly testify that a party was nervous or appeared excited at a particular time, yet, in order to say that he was of a nervous disposition, the witness would have to know the party, or at least would have to observe him, for a sufficient time to form a conclusion. It does not follow

that because a man is nervous at one time, he is always or generally nervous. The record shows that the witness Burla did not know the defendant prior to October 13, which was the second day after the homicide. The witness had testified that on the 13th, when he arrested the defendant, "the defendant was quite nervous, but he might be of a nervous disposition; I don't know." He was then asked: "Would not his general appearance indicate that to you?" This was objected to, and the objection was sustained. The witness had said that he did not know whether the defendant was of a nervous disposition, and, in view of this answer, his reply to the question propounded would have been only an opinion, without any substantial foundation for it. The jury could determine from the appearance of the defendant whether his nervousness on October 12, as described by Westbrook, was his normal condition, as well as the witness Burla.

7. Objection is made to a question asked the witness Westbrook, on redirect examination; but the record discloses that substantially the same answer as the witness made to it had been made by him in reply to a question asked him by counsel for defendant, on cross-examination, and the defendant is not in position to complain.

8. James Lavelle, a witness for the state, was asked on cross-examination: "Mr. Lavelle, I will ask you to state whether or not you knew of some shots being fired there one day in that part of town a short time before this occurrence, by the deceased?" Objection was made to the question, the objection sustained, and error is predicated upon the ruling. The purpose of the question was not explained, and is not apparent. The brief of appellant does not indicate wherein he was prejudiced by the court's ruling, and we will not assume that he was.

9. The instructions: (a) Error is predicated upon the giving of an instruction to the effect that it was not necessary that the alleged crime should have been committed upon the precise date laid in the information, if it appeared from the evidence that it was committed at any time prior to the filing of the information. The instruction states the law.

Sections 9026 and 9152, Revised Codes, provide:

"Sec. 9026. There is no limitation of time within which a prosecution for murder or manslaughter must be commenced. It may be commenced at any time after the death of the person killed."

"Sec. 9152. The precise time at which the offense was committed need not be stated in the indictment or information, but it may be alleged to have been committed at any time before finding or filing thereof, except where the time is a material ingredient in the offense."

In this instance the time was not a material ingredient of the offense. But for a stronger reason the defendant was not prejudiced. The crime was alleged to have been committed on October 11, 1907, and all the evidence shows that it was committed, if committed at all, on that precise date. But it is said that in this instruction the court assumed that a crime had been committed. The instruction follows: "The jury are instructed that, while in the information it is alleged that the crime was committed on the eleventh day of October, 1907, yet if the jury find from the evidence under the instructions of the court the crime was committed at any other time," etc. While it is always better for a trial court to avoid such expressions by the use of the word "alleged" before the word "crime," or by employing some equivalent phrase, yet under the circumstances disclosed by this record it would be a violent impeachment of the intelligence of the jurors to say that they were misled or influenced, to the prejudice of the defendant, by reason of the objectionable language used, when considered with that portion immediately preceding it, and to which it clearly refers.

(b) The trial court gave a definition of voluntary manslaughter and of involuntary manslaughter, and instructed the jury that they might find the defendant guilty of murder in the first degree, murder in the second degree, or manslaughter, if in their judgment the evidence warranted it. It is now said that any instruction on the subject of manslaughter was inapplicable to the facts of this case. Even so, the defendant cannot complain. He was found guilty of murder in the second

degree, and these instructions upon the subject of manslaughter merely gave the jury an opportunity to find him guilty of a lesser offense. (*State* v. *Farnham*, 35 Mont. 375, 89 Pac. 728.)

(c) Exception is taken to the refusal of the trial court to give defendant's offered instruction No. 2; but an examination of the record discloses that in instruction No. 27, given by the court, the same subject matter as contained in defendant's offered instruction is fully covered, and, being once before the jury, it was not necessary to repeat it.

(d) The defendant offered an instruction beginning as follows: "You are instructed that the witness Tony Rose has given evidence in this case, and that the said Tony Rose was living with the deceased at and about the time of his death, as his wife, and in this connection," etc. The trial court struck out the words "and that the said Tony Rose was living with the deceased at and about the time of his death, as his wife," and error is now predicated upon the action of the court in making the modification. But this record shows that there was not any objection made to the modification, and no exception taken. Subdivision 4 of section 9271, Revised Codes, which deals with the settlement of instructions in criminal cases, provides: " * * * And no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error, and exception incorporated in and settled in the bill of exceptions as herein provided."

(e) The defendant offered an instruction beginning as follows: "You are instructed that in a criminal case, where the evidence fails to show any motive to commit the crime charged on the part of the accused, this is a circumstance in favor of his innocence." The court struck out the words "in favor of his innocence," and substituted in lieu thereof the words "which you should consider." Complaint is made of this modification, and *Vaughan* v. *Commonwealth*, 85 Va. 671, 8 S. E. 584, is cited in support of defendant's contention. In the Virginia case it was held reversible error to refuse the following charge: "That the absence of all evidence of an inducing cause or motive to

commit the crime, when the fact is in reasonable doubt as to who committed it, affords a strong presumption of innocence.'' The decision is unique, to say the least. It is the law in this state, and we had assumed that it was the rule everywhere, that if there is a reasonable doubt as to who committed the crime, the defendant is entitled to a verdict of not guilty, without reference to the question of motive. If the jury find that there is a reasonable doubt as to who committed the crime, they have no right whatever to consider the question of motive, and should bring in a verdict of not guilty. The decision of the Virginia court is contrary to the overwhelming weight of authorities. (12 Cyc. 149.) It is not necessary for the state to prove motive. ''The presence or absence of it is not conclusive, however, but is to be considered as any other evidentiary fact bearing upon the ultimate question of the guilt or innocence of the defendant, and is more or less significant in the light of the facts of the particular case. The finding of a motive is not indispensable, however. Were this true, it would oftentimes be impossible to secure conviction; for such is the nature of the human heart, and so various are the springs of action hidden therein, that it is often impossible to fathom it and assign any motive whatever to the act under consideration. Under such circumstances it is the duty of the jury to convict, notwithstanding the lack of proof tending to show motive, if the crime is otherwise clearly established.'' (*State* v. *Lucey,* 24 Mont. 295, 61 Pac. 994.) The instruction as modified correctly states the law.

10. Repeated efforts, without avail, were made by counsel for defendant at the trial to have stricken from the deposition of the witness Tony Rose portions of certain answers. Upon her examination the witness early disclosed a very marked penchant of volunteering information which was not at all responsive to the questions propounded, and persisted in this practice throughout her examination. The portions of her answers to which objections were made should have been stricken, according to the ordinary rules of practice. But a careful reading of the record fails to disclose to us that any of the testimony thus volunteered was of any consequence to the state or detri-

mental to the defendant, and therefore the rulings, while erroneous, ought not to work a reversal. On appeal we are confronted with the mandatory provisions of sections 9415 and 9548, Revised Codes, which provide:

"Sec. 9415. After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

"Sec. 9548. Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor any error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

11. For the reason just given, we think there was not any reversible error committed in striking out portions of the cross-examination and redirect examination of the same witness. The state had not sought to show that larceny or robbery was the motive which prompted the commission of the crime; on the contrary, the evidence, in so far as it makes any disclosure, shows that such could not have been the case.

12. It is urged with great earnestness that the evidence is insufficient to sustain the verdict. The evidence is wholly circumstantial, and necessarily fragmentary. While the case, as a whole, does not present a very strong showing, and different juries might have reached different conclusions upon it, we are not prepared to say that the evidence, if believed, as it must have been, was not sufficient to warrant a jury of fair-minded men in reaching the conclusion evidenced by this verdict. Since the evidence is circumstantial, to review it would require a recital of practically all of the record, and would not subserve any useful purpose.

After as careful examination as we are able to make, we fail to find any reversible error. The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.