### JESS LITTRELL v. STATE.

No. A-3359.   Opinion Filed Dec. 10, 1921.
Rehearing Denied Sept. 23, 1922.
(208 Pac. 1048.)

(Syllabus.)

1.    Appeal and Error—Discretion of Trial Court—Continuance. Ordinarily a motion for a continuance is addressed to the sound discretion of the court, and the court's refusal to grant a con-

tinuance will not be disturbed unless manifest injustice has been done. Held, in this case, there was no abuse of discretion.

2. **Jury—Extent of Constitutional Right to Impartial Jury.** The defendant has a constitutional right to an impartial jury, but he has no inherent right to have his case tried before jurors residing in any particular community or communities, or to demand that jurors of certain occupations shall be included or excluded.

3. **Same—Defendant not Entitled to Challenge Array.** Where the jurors were selected from a list of 600 names taken at random from territory containing more than five-sixths of the total population of the county, there was no abuse of discretion on the part of the trial court in overruling a challenge to the array.

4. **Same—Statutory Proceedings for Selection of Jurors Directory but Should Be Followed.** The mode of selecting jurors provided by statute is directory, and unless it manifestly appears that some slight deviation from the statutory method has been abused, to the prejudice of the accused, the overruling of a challenge will not be disturbed.

(a) Because the statute is directory should not be considered as a license to materially deviate from the statutory method of selecting jurors. Such departures are dangerous, and may under certain circumstances, amount to reversible error.

5. **Evidence—Evidence Showing Commission of Different Offense.** Evidence otherwise relevant is not rendered inadmissible because it shows the commission of another and different offense. Evidence disclosing another offense is often admissible for the purpose of showing felonious intent or circumstances indicative of guilt of the crime with which the defendant is charged.

6. **Trial—Prosecutor's Interrogating Defendant's Witnesses out of Court not Error.** Alleged misconduct of the assistant county attorney in improperly interrogating witnesses for the defendant out of court, as disclosed in the body of the opinion, held not reversible error.

Appeal from District Court, Oklahoma County; John W. Hayson, Judge.

Jess Littrell was convicted of bank robbery and sentenced to serve a term of 25 years in the state penitentiary, and he appeals. Affirmed.

H. M. Carr, J. Q. A. Harrod, and A. B. Burris, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.   Jess Littrell, plaintiff in error, in this opinion designated as the defendant, was on the 15th day of November, 1917, convicted of robbing the First National Bank of Harrah on the 12th day of January, 1917, and his punishment was fixed at imprisonment in the state penitentiary for a term of 25 years. From this judgment and sentence he appeals.

It appears from the record that this defendant had been a resident of Nowata county, Okla., and that he was arrested in Okfuskee county, Okla., on January 18, 1917, charged with having killed L. M. Bouldware. On the same day a warrant was issued, charging this defendant with the robbery of the bank at Harrah six days previous. After a mistrial in Okfuskee county upon the charge of murder the robbery charge here at issue was set for trial in Oklahoma county for November 7, 1917. The defendant claimed that he was not ready for trial, and the cause was passed over and reset for November 12, 1917.

The defendant contends that the judgment in this case should be reversed for reasons substantially as follows:

(1) That the defendant's motion for a continuance should have been sustained.

(2) That the defendant's challenge to the jury panel should have been sustained.

(3) That incompetent evidence was admitted, to the prejudice of the defendant.

(4)    That some of the defendant's witnesses were intimidated by the assistant prosecuting attorney, to the prejudice of the defendant.

The grounds principally relied upon for a continuance were that the authorities had succeeded in keeping the defendant in jail, and that, if he had been at liberty, he would have had a better opportunity to prepare for and organize his defense.  The record shows that he had employed counsel, and that he and his counsel for some months previous knew that the case would come on for trial in due course in Oklahoma county.  Considering the application as a whole, no good cause for a further continuance was set up in the motion.  A motion for a continuance is addressed to the sound discretion of the trial court, and the court's refusal to grant a continuance will not be disturbed unless manifest injustice has been done. Richards v. State, 15 Okla. Cr. 582, 179 Pac. 777; Reed v. State, 14 Okla. Cr. 651, 174 Pac. 800.  See, also, other cases cited in the above opinions.

It is next urged that the court should have sustained the defendant's challenge to the jury panel.  The grounds urged in this challenge were that the 600 persons designated by the jury commissioners from which to select jurors were all residents of Oklahoma township, in Oklahoma county, and that the jury commissioners met on the 10th day of July for the purpose of selecting the jury list instead of on the first Monday in July, as the law directs.  It is claimed that the jury list, having been selected from one municipal township in Oklahoma county, was not representative of the body of the people of the county, and that such procedure tended to prevent the defendant from having a fair and impartial trial.

The defendant has a constitutional right to a fair and impartial jury, but the defendant has no absolute or vested right to have his case tried before jurors residing in any par-

ticular community or communities. This court will take judicial notice that Oklahoma City is in Oklahoma township, in Oklahoma county, and is the most populous city in the state, whose citizenship is of a cosmopolitan character, and that the number of inhabitants in Oklahoma township is more than five-sixths of the total population of the county. The defendant's counsel in his brief admits that the defendant had the reputation of being a violator of the law. The record shows that he was a fugitive from justice on charges of illegally transporting liquor in Oklahoma; that he was charged with murder in another county; and that he was here charged with bank robbery. The defendant complains that the jury in this case was composed of 12 business men from Oklahoma City, and that the result might have been different if the jury had been composed of some cowboys, old settlers and frontiersmen, stockmen, and farmers.

The defendant has no right to insist upon or demand that jurors of certain occupations shall be included in the jury. The right of the accused in the selection of a jury is one of exclusion of incompetent jurors, not one of inclusion of particular persons or classes of persons who are competent. Mathews v. State, 19 Okla. Cr. 153, 198 Pac. 112.

It would be a novel position to contend that because an accused person bears (or enjoys?) a bad reputation as an habitual criminal, he should be given privileges and safeguards not accorded to others. The disadvantages of a bad reputation affect people in their business and social relations everywhere, and the ill effects of such reputation cannot always be eliminated in the trial of cases. If courts should attempt to do so it would result in the miscarriage of justice rather than be instrumental in the administration of justice.

In the case of Watson v. State, 9 Okla. Cr. 1, 130 Pac. 816, it appeared that one-half of the 200 names on the jury

list as selected were of persons living in Checotah township, and that none were selected from two other municipal townships in the county. There was no claim nor showing that these irregularities were corruptly conceived, or that the jury commissioners were in any way prejudiced against the defendant. Before the defendant can avail himself of such irregularities on the challenge to the panel, he must show intentional omission on the part of the jury commissioners, from which he has suffered material prejudice. However, in the Watson Case it is stated that it is the duty of district courts to compel a compliance not only with the spirit of these statutes, but, so far as possible, with the letter thereof. This declaration we again approve and emphasize. But the statutes providing for the selection of jurors are directory only, and any slight deviation from the mode prescribed therein will not be sufficient grounds for sustaining a challenge to the panel unless it appears that such irregularities are prejudicial to the substantial rights of the defendant. Bearing in mind that the defendant has no inherent or vested right to have a case tried before any particular men or class of men, we hold that in this case there was no prejudicial error in the court's refusal to sustain the challenge to the panel. Blankenship v. State, 10 Okla. Cr. 551, 139 Pac. 840, L. R. A. 1916A, 812; Moore v. State, 9 Okla. Cr. 9, 130 Pac. 517; Wood v. State, 3 Okla. Cr. 553, 107 Pac. 937.

The defendant next complains that the court permitted F. C. Carter, who was acting as a deputy sheriff, to testify to resistance to arrest on the part of the defendant five days after the robbery. It appears that the defendant was in hiding a few miles distant from the place of the robbery, and that when he and others were discovered and surrounded by the officers he fired several shots at this officer and wounded another deputy there. Defendant came out of the house and literally shot his way through the officers' lines, sending one

bullet through the hat of Frank Carter and others uncomfortably close to him, and finally made his escape from this posse. Certainly this flight, resistance to arrest, and escape on the part of the defendant was admissible in evidence, as a circumstance indicative of guilt, and this notwithstanding the fact that he committed another crime in so resisting arrest. Jones on Evidence, § 287, states the law as follows:

"Thus flight, * * * attempt to escape, resistance to arrest, are all facts which may tend to show consciousness of guilt, and are in common practice received in evidence as relevant."

Evidence otherwise relevant is not rendered inadmissible because it shows the commission of another and different offense, and such circumstances may be shown in detail, if otherwise admissible, for the purpose of showing felonious intent or circumstances indicative of guilt of the crime with which defendant is charged. Vickers v. U. S., 1 Okla. Cr. 452, 98 Pac. 467; Hunter v. State, 3 Okla. Cr. 533, 107 Pac. 444; Miller v. State, 9 Okla. Cr. 255, 131 Pac. 717, L. R. A. 1915A, 1088.

The defendant next complains that he was prejudiced by the alleged misconduct of the assistant prosecuting attorney in interrogating a witness subpoenaed by the defendant in the corridor of the courtroom, that the witnesses for the defendant were in a room near by and a Mr. Armstrong went into the room where these witnesses were assembled and ordered them to leave the room and go out into the lobby, and that while in the lobby this objectionable interrogation of the witness Mullins took place. Mr. Mullins was later called into court, in the absence of the jury, and, after being sworn, testified as follows:

"By the court: Mr. Mullins, the court has been informed that some one has been to you and told you that you shouldn't testify to certain things in this case.

"Mr. Carr: I beg the court's pardon. I didn't say that, I said Mr. Mullins had said to me that there was a person who had come to him and told him that he wanted to get him right; that he wanted him to be very sure about that dance; that Jess Littrell was down there, and he wanted to be mighty careful about fixing the date.

"The Witness: I don't think I recall that, Mr. Carr.

"The Court: Well, make your statement.

"The Witness: Why? there was nothing as far as my part, nothing that was intended.

"Mr. Carr: Just state what was said.

"Witness: Well, we were talking about that date, and of course I was not positive as to the date, and I didn't know, and he spoke to me and said that I should be positive or something to that effect, and I said I could not be.

"Mr. Carr: You didn't say that to me at all. You told me that he told you that you were treading on pretty soft and dangerous ground and had better be careful.

"Witness: Well, he didn't say those words exactly.

"Q. He didn't say those words exactly? A. No; but that is what he meant by it, was that I didn't have the dates right, and of course I didn't know the dates, and of course being down there and we just naturally spoke about the boy going down there and the time I went down with the doctor.

"Q. Who was this party that was talking to you? A. That gentleman over there.

"Q. Which gentleman,

"Mr. Scothorn: If the court please, I am the one that talked to him.

"The Court: Mr. Scothorn, I think that was very improper, and as an officer of this court you should be severely reprimanded. I don't think I ever heard anything of that kind occurring in my experience that I have had with any of the officers here in this county.

"Mr. Scothorn: Now, if the court please, I was told that this witness would not swear that it was on the 12th and I was told that by Dr. Morgan. Dr. Morgan went out and got this man and took him down and he didn't say that was the date.

"Mr. Mullins: That's it.

"Mr. Scothorn: And I certainly think that I had a right to ask this man, and I asked him what hour, and he said along early in the morning or from 11 to 12 o'clock, and I asked him what date, and he couldn't fix the date, and that's all that I said.

"The Court: I think that that was improper; it was highly improper for you to talk to this witness. When that occurs again during the trial of this case, or any other person here, they will be severely reprimanded by this court. These witnesses should come here and testify what they know without any undue influence or coercion by anybody or any attempt by anybody to influence a witness.

"Mr. Scothorn: Does the court hold that the state cannot talk to these witnesses? Do I understand that by the statement you have just made?

"The Court: I think it was improper, this occurrence was improper, and must not occur during the trial of this cause. That's all."

Assuming that the assistant county attorney succeeded in getting the witness Mullins to change his testimony from a positive declaration, indicating an alibi, to what may be termed neutral or uncertain testimony in that regard, under the circumstances here it would not amount to prejudicial error. The defendant produced a large number of other witnesses who testified concerning the same state of facts, indicating a positive, absolute alibi, which was the only defense interposed by the defendant. The testimony evidently was not believed by the jury, and the testimony of Mullins was,

at most merely cumulative. On the other hand, the testimony quoted, to our mind, indicates that this witness testified carefully and conscientiously, and was actually not certain about the date of the dance, and there is no showing that in fact the witness Mullins modified his testimony by reason of the conversation had with the assistant prosecuting attorney. A person convicted of a crime upon such positive, convincing testimony as appears in this record has no legal right to have a verdict set aside on the grounds that his defense was frustrated in whole or in part, unless it is shown that there is some probability that such defense is true. Section 6005, R. L. 1910, commonly known as the harmless error statute, was intended to operate under just such circumstances.

Finding no substantial error in this record, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.