### JESS LITTRELL v. STATE.

No. A-3360. Opinion Filed Dec. 19, 1921.
Rehearing Denied Sept. 23, 1922.
(209 Pac. 184.)

(Syllabus.)

1. Jury—"Impartial Juror"—Juror not Disqualified by Opinion Formed from Reading Newspaper. The words "impartial juror," as expressed in the Constitution, have no such fixed meaning as would preclude the Legislature from defining, in some measure, what should constitute an impartial juror. There was no intention to exclude persons who read newspapers, and it was never intended that an opinion formed from such information should necessarily disqualify such person as a juror.

a. The mere fact that a juror has a settled impression or opinion as to the merits of the case, resulting from reading newspaper accounts or from current rumor, and not obtained from personal knowledge of the facts or from witnesses who purport to know the facts, does not necessarily render the juror incompetent. R. L. 1910, §§ 5858 and 5861.

b. Ordinarily, where a juror testified that he believes he can and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an impartial juror, under our Constitution and the statutes of this state.

2. Same—Trial Court to Be Satisfied that Juror Examined Is Indeed Impartial. Trial courts should be careful not to permit persons of doubtful or uncertain qualifications to serve as jurors. The trial court should be satisfied from an examination of the prospective juror that he is indeed impartial, as defined by the statutes and decisions of this state.

3.    **Evidence—Relevant Evidence Showing Another Offense.** Evidence otherwise relevant is not rendered inadmissible because it shows the commission of another and different offense.

4.    **Trial—Constitutional Right to Be Confronted by Witnesses—Waiver.** The constitutional right of a defendant to be confronted by the witnesses against him is one that may be waived. Where, without first having laid a sufficient predicate of the introduction of a transcript of the evidence of an absent witness for the state, taken at a former trial, such transcript, over the objections of the defendant, is read to the jury, and where the same witness at the former trial was called, and testified on behalf of the defendant, and, at the request of the defendant a transcript of the latter testimony is introduced and read to the jury, the absence of a proper predicate for the introduction of the testimony of this witness is waived, where such testimony on behalf of the defendant is incomplete and refers to the testimony on behalf of the state, and the testimony as a whole is clearly favorable to the defendant.

Appeal from Superior Court, Okfuskee County; John L. Norman, Judge.

Jess Littrell was convicted of murder, and sentenced to serve the term of his natural life in the state penitentiary, and he appeals. Affirmed.

H. M. Carr and A. B. Burris, for plaintiff in error.

S. P. Freeling, Atty Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J. Jess Littrell, plaintiff in error, in this opinion referred to as the defendant, was on the 24th day of November, 1917, in the superior court of Okfuskee county, convicted of the crime of murder, committed on the 18th day of January, 1917. His punishment by a verdict of the jury was fixed at imprisonment in the state penitentiary for life. From the judgment on the verdict, subsequently rendered, he appeals to this court.

The facts in this case, briefly stated, are that the defendant, with two or more confederates, on the 12th day of Janu-

ary, 1917, by intimidation and force of arms, robbed the First National Bank of Harrah, in Oklahoma county. About five days later certain peace officers of Oklahoma county attempted to arrest this defendant and companion, Russel Tucker, at the residence of one John Welcher in Oklahoma county. While resisting arrest and endeavoring to escape, these two, Littrell and Tucker, fired a number of shots at the officers, one of whom was wounded. Tucker and the defendant escaped, and the sheriff's force of Oklahoma county were notified, and they in turn notified the various sheriffs and police departments throughout the state of the crime committed and the resistance of arrest and escape of the criminals.

On the following morning, the 18th of January, the defendant and Tucker were located at the home of a negro, Williams, in Okfuskee county, where they were eating breakfast. When the sheriff's posse approached this house, the defendant and Tucker fled through a rear door, and made an attempt to evade arrest. In resisting arrest, and attempting to effect their escape, they opened fire upon the officers, and a battle ensued in which the defendant shot and killed a deputy sheriff, L. M. Bouldware. The defendant subsequently surrendered to the officers, after having been severely wounded. Before Bouldware was shot and killed by the defendant, Tucker had been shot and killed by some member of the posse.

This defendant was tried and convicted in Oklahoma county, on the 15th day of November, 1917, of robbing the bank at Harrah, and his case was appealed to this court. The sentence and judgment of the trial court, fixing his punishment at imprisonment in the state penitentiary for a term of 25 years, has just been affirmed by this court. 21 Okla. Cr. 466, 208 Pac. 1048, Some of the matters and things urged by the defendant in this case as reversible error are similar to the mat-

ters urged in the robbery case, and, for the sake of brevity, these will not be treated in detail in this opinion.

It is first urged by the defendant that the jury before whom he was tried was biased and prejudiced, for the reason that a number of them testified that they had formed or expressed opinions on the merits of the case, based upon newspaper reports purporting to give the facts surrounding the homicide, and from indefinite rumors current in Okfuskee county. In order to illustrate the objections urged on this assignment of error, we quote from the examination of juror Z. Ott given on his voir dire. We quote this part of the record as being more or less typical of the qualifications of some of the other jurors, except that the alleged disqualifications of Mr. Ott are more pronounced than in the case of any other juror of whom complaint is made:

"Q. Mr. Ott, did you know Mr. Bouldware in his lifetime? A. No, sir.

"Q. Do you know the defendant? A. No, sir.

"Q. Do you know his brother, Ed Littrell? A. No, sir.

"Q. Have you ever heard what purported to be the facts in this case? A. Just heard the talk, and read it in the Ledger and the News.

"Q. Heard the talk of the community? A. Yes, sir.

"Q. Have you formed or expressed an opinion as to the guilt or innocence of this defendant? A. Yes, sir.

"Q. That opinion is based solely on the public notoriety and public reports? A. Yes, sir.

"Q. You haven't talked to any of the eye witnesses, or who claimed to be eye witnesses? A. No, sir.

"Q. If chosen as a juror in this case, could you and would you try this case solely on the law and evidence, and disregard what you have heard? A. It would take evidence to change my view.

"Q. Could you, and would you, if chosen as a juror, try the case solely on the law and the evidence as given from the court and the witnesses?

"By Mr. Carr: Objected to as not a qualifying question.

"By the Court: Overruled.

"By Mr. Carr: Exception.

"A. Yes, sir.

"Q. You will? A. Yes, sir.

"Q. You will give the defendant and the state both a fair and impartial trial? A. Yes, sir.

"Q. Have you any conscientious scruples against the infliction of the death penalty in a proper case where the law and the evidence justify it? A. No, sir.

"Q. Do you know of any reason, if chosen as a juror, why you could not give both the state and the defendant a fair and impartial trial? A. No, sir."

Pass the juror.

Examination by Mr. Carr:

"Q. You say you have an opinion as to what ought to be done with this defendant at this time? A. Yes, sir.

"Q. And that has been formed from what you have heard people talk about the case and from what you have read in the Ledger and the News? A. Yes, sir.

"Q. You read the account and what the witnesses testified in the trial in September? A. Didn't read all of it.

"Q. Did you read what Berry Jones said? A. Yes, sir.

"Q. And his name is indorsed as one of the witnesses on the information. Did you read what W. O. Green said? A. I don't remember.

"Q. And Rash McKinnon? A. I don't know.

"Q. And from reading that testimony was formed an opinion as to what ought to be done with this defendant? A. Yes, sir.

"Q. And you have that opinion now? A. Yes, sir.

"Q. That opinion would take evidence to remove? A. Yes, sir.

"Q. Do you know whether or not you could totally disregard that opinion before you went into the jury box? A. Well, it would take evidence to change it.

"Q. You couldn't disregard it until you heard the evidence? A. No, sir.

"Q. You would go into the jury box with that much bias, whichever way it might be? A. Yes, sir."

Section 5858, R. L. 1910, among other things, defines actual bias which will operate as a disqualification of a juror as follows:

"The existence of a state of mind on the part of a juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging."

This statutory provision must be considered along with the provisions of section 5861, R. L. 1910, which is, in part, as follows:

"No person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him."

From a perusal of the testimony quoted, it will be seen that this juror was not acquainted with the defendant or with

the deceased. From portions of the testimony not quoted, it appears that he was not an officer, and that he had no business relations with the lawyers interested in the case. There was no showing made that the juror had any leaning or bias one way or another, except that he had formed an opinion as to the merits of the case, based upon newspaper reports and common notoriety. He stated, under oath, that, notwithstanding such opinion, he could and would give the defendant impartial consideration. The trial court had the advantage of observing this juror during his voir dire examination, and was better able, under the exercise of a sound discretion, to determine, whether or not the juror, if chosen, would consider the testimony produced at the trial fairly and impartially.

The words "bias" and "prejudice," as relating to jurors, are not exactly synonymous. A man cannot be prejudiced against another without being biased against him, but he may be biased without being prejudiced. Bias is a particular influence which sways the judgment; the inclination of the mind towards a particular subject. It is not to be supposed that the Legislature expected to secure in a juror a state of mind absolutely free from all inclination towards one side or the other. If a juror is under such an influence as to sway his mind to one side or the other so as to prevent his deciding a cause according to the evidence, he is incompetent; otherwise not. Black's Law Dictionary (2d Ed.) 130.

The words "unprejudiced," "fair," and "impartial" are terms more or less relative in their nature. Strictly speaking, scarcely any of us are absolutely impartial; absolute fairness and impartiality might involve the education or want of education of a juror, his religious or political affiliations, his early training, his business and social relations. To consider all of these matters would involve the courts in a

labyrinth of mental philosophy from which no practical rules of practice could be deduced. To meet these exigencies the statutes of this and all other states give to an accused the right to challenge a number of jurors peremptorily, without urging or expressing any cause for such challenge. Under our Constitution every accused person has a right to a trial by an "impartial" jury, a jury not favoring or disfavoring an individual because of the emotions, affections, or prejudices of the human mind. Randle v. State, 34 Tex. Cr. R. 43, 28 S. W. 953.

The words "impartial juror," as expressed in the Constitution, have no such fixed meaning as would preclude the Legislature from defining, in some measure, what shall constitute an impartial juror. There was no intention to exclude persons who read newspapers, and it was never intended that an opinion formed from such information should necessarily disqualify such person as a juror. The mere fact that a juror has a settled impression or opinion as to the merits of the cause, resulting from reading newspaper accounts or from current rumor, and not obtained from personal knowledge of the facts or from witnesses who purport to know the facts does not necessarily render the juror incompetent. Ordinarily, where a juror testifies that he believes he can, and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an impartial juror, under our Constitution and the statutes of this state. McHugh v. State, 42 Ohio St. 154, 161. The decisions of this court have been practically to the same effect. Quite an exhaustive analysis of this subject may be found in the case of Horn v. State, 13 Okla. Cr. 354, 164 Pac. 683. See, also, Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719.

The case here at issue resulted in a great deal of newspaper notoriety, but the circumstances, as reported, were not of

such a character as would tend to arouse passion or prejudice in the minds of readers not directly interested. It may be assumed that many of the residents of the county had read of the affair, but we cannot assume that because of this the residents of the county, in a general way, were prejudiced or not impartial.

The deductions drawn in this opinion, and other cases cited, to the effect that an opinion expressed or entertained, based on rumor or newspaper reports, does not necessarily disqualify a juror, should not be construed by trial courts as a license to permit persons of doubtful or uncertain qualifications to serve as jurors. The trial court should be satisfied, from the examination of the prospective juror, that he is indeed impartial, as defined by the statutes and decisions of this state. In this case we cannot say that the court abused his discretion in permitting the juror Ott, and others of whom complaint is made, to serve as jurors.

It is next urged that the court erred in admitting, over the objections of the defendant, evidence of his commission of other crimes. In the case of Jess Littrell v. State, 21 Okla. Cr. 466, 208 Pac. 1048, in which this same defendant was convicted of the crime of bank robbery in Oklahoma county, it was held that evidence otherwise relevant is not rendered inadmissible because it shows the commission of another and different offense. The objections urged in the robbery case are similar to the objections urged here, except that in the instant case the defendant himself, in the cross-examination of witnesses, brought out and emphasized the fact that he was accused and had been convicted of other crimes.

It is further contended that the court committed error in admitting the transcript of the testimony of R. W. Williams taken at the former trial of this cause, without first

having established a sufficient predicate for the introduction of such testimony. It is true, indeed, that the record does not disclose that the witness Williams was dead, had become insane, or was ill and unable to attend the trial, or that he was beyond the jurisdiction of the court, and no showing of diligence was made as a condition precedent to the introduction of his testimony taken at the former trial. Bert Davis v. State, 20 Okla. Cr. 203, 201 Pac. 1001.

At the former trial Williams was a witness for both the state and the defendant. The record here shows that, after the transcript of the record of Williams' examination as a witness for the state had been read to the jury, the defendant then offered in evidence the transcript of his testimony as a witness for the defendant, which was also read to the jury. The latter by itself was incomplete, and, in order to be intelligently considered by the jury, the testimony of Williams both as a witness for the state and as a witness for the defendant were necessarily considered together, and this testimony, on the whole, was much more favorable for the defendant than for the state. The constitutional right of the defendant to be confronted by a witness against him is one that may be waived. The court will not relieve an accused person from a criminal conviction where by his own voluntary action he introduces material evidence of an absent witness in his own behalf, connecting up portions of his evidence not covered by other testimony. State v. Vanella, 40 Mont. 326, 106 Pac. 364, 20 Ann. Cas. 398; 16 C. J. Criminal Law, § 2122.

Under the circumstances here, this defendant waived his right to be confronted by the witness Williams.

The defendant urges numerous other assignments of error, some of which are similar to those treated in case No. A-3359, supra. All of these have been carefully examined

and found without sufficient merit to warrant a reversal of this case. The matters urged by defendant as grounds for a reversal of this case relate to questions of practice and procedure of a technical nature. The defendant did not testify in his own behalf, and no witness for the defense disclosed facts in any way tending to justify or excuse the commission of the homicide. The evidence was clear and convincing that the defendant was guilty of murder as charged.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.