# LAFAYETTE R. HORN v. STATE.

No. A-2486.    Opinion Filed May 5, 1917.

(164 Pac. 683.)

1. **APPEAL AND ERROR—Question for Jury.** In the trial of a criminal case, questions of fact involving the guilt or innocence of the accused are always for the jury, and when, on appeal, the record discloses facts which would have been sufficient either to warrant a verdict of acquittal or to support a verdict of guilty, the finding of the jury will not be disturbed. In such cases only errors of law will be reviewed.

2. **TRIAL—Requested Instructions—Given Instructions.** When the instructions of the court properly submit all the issues in the case fairly and impartially, it is not necessary to submit additional requested instructions emphasizing some peculiar phase of the case.

3. **TRIAL—Keeping Jury Together.** In a capital case, the jury should always be placed in charge of a sworn bailiff and kept together, upon the reasonable request of counsel for either the state or the defendant. It is discretionary with the court, however, to permit the jury to separate at any time before the cause is finally submitted when no such request is made.

4. **JURY—Disqualification—Expression of Opinion—Statute.** (a) Section 5861, Rev. Laws 1910, provides that "no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury,

founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him."

(b) Following the rule provided in this section, jurors' statements on **voir dire** examined and the ruling of the court admitting them to the panel upheld, upon the ground that they were duly qualified under the law to sit in the instant case.

5.    **CASE DISTINGUISHED.** The doctrine in **Turner v. State,** 4 Okla. Cr. 105, 111 Pac. 988, **Scribner v. State,** 3 Okla. Cr. 605, 108 Pac. 422, 35 L. R. A. (N. S.) 985, and **Tegeler v. State,** 9 Okla. Cr. 149, 130 Pac. 1164, distinguished from the doctrine in **Gentry v. State,** 11 Okla. Cr. 355, 146 Pac. 719, followed in the case at bar.

*Appeal from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

Lafayette R. Horn was convicted of manslaughter in the first degree, and he brings error. Affirmed.

*Frye & Frye* and *W. A. Carlile,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, Lafayette R. Horn, was tried at the December, 1914, term of the district court of Sequoyah county, upon an information charging him with the murder of Isaac Christie, and convicted of manslaughter in the first degree. His punishment was fixed at imprisonment in the state penitentiary for a term of 20 years.

The homicide occurred on a public highway near the house of the plaintiff in error on the 13th day of June, 1914. It appears that there had been ill feeling existing between the plaintiff in error and the deceased for some time. The plaintiff in error admitted the killing, and undertook to justify the same on the ground of

self-defense. Proof was introduced on behalf of the state tending to show that the deceased was shot from his horse while quietly riding down the public road molesting no one; that the plaintiff in error fired on deceased out of a desire for revenge and without provocation. Proof was offered on behalf of the plaintiff in error tending to show that the deceased had gone into the field where the plaintiff in error was at work and had run him out of the field on the morning of the homicide; that he was passing along the road, and upon discovering plaintiff in error between his house and barn got off his horse and assaulted him with a knife, without provocation. Plaintiff in error also offered testimony tending to show that deceased was a man of violent and dangerous disposition. He also offered testimony that he, the plaintiff in error, was a peaceable, law-abiding citizen, bearing a good reputation as an upright citizen in the neighborhood in which he lived. Numerous witnesses were offered on both propositions. In rebuttal, the state introduced witnesses on each proposition, the testimony of whom tended to establish the fact that Christie was a peaceable, law-abiding man, and that the plaintiff in error was an overbearing, dangerous man, and bore a bad reputation for being a peaceable, law-abiding citizen in the community in which he lived.

A careful consideration of the evidence offered by each side discloses clearly that the question of fact was solely for the jury, and that a verdict of acquittal could not have been criticized on the record before us. The verdict of guilty was equally within the province of the jury. It therefore follows that unless there is substantial error of law, no relief can be obtained upon appeal to this court.

The first assignment of error urged in the brief is based upon the proposition that the court erred in refusing to give the following requested instructions:

"You are further instructed that where the defendant, without fault on his part, at his own home or place, is attacked by the deceased in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take his life or to do him some great bodily harm, and there is a reasonable ground for believing the danger imminent, and that such design will be accomplished, and the defendant so assaulted has reasonable grounds to believe and does believe such danger is imminent, he may act upon appearances, and without retreating kill the deceased. And if you should so find or have reasonable doubt therefor, you should resolve that doubt in favor of the defendant and acquit him."

In lieu of this instruction, the court gave the following:

"Gentlemen of the jury, you are further instructed that where the evidence shows beyond a reasonable doubt that the homicide was committed by the defendant, and the defendant seeks to avoid the responsibility for the killing on the grounds of self-defense, you are instructed that the defendant had a right to act in his own necessary self-defense upon a reasonable apprehension of danger, as viewed from the defendant's standpoint, although he may have been mistaken as to the actual extent of the danger, nevertheless, he would have a right to protect his person from great bodily harm or injury even to taking the life of the assailant, if it reasonably appears by acts or by words coupled with the acts of the person killed that it was the purpose and intent of such person to do the defendant great bodily harm or injury as the said acts or surrounding circumstances would reasonably appear, whether real or apparent, to the said defendant at the time of the homicide. Therefore, if you

believe from the evidence that the said L. R. Horn intentionally shot and killed the said Isaac Christie, and further believe that at the time of so doing the deceased was in the act of making or about to make upon him an attack, which from the manner and character thereof, together with the weapons used or attempted to be used, if any, caused the defendant to have a reasonable expectation of fear of death or serious bodily injury at the hands of deceased as viewed from the defendant's standpoint at the time of the killing, and acting under such reasonable expectation or fear of death or serious bodily harm he intentionally shot and killed the said Isaac Christie, then you will acquit him, or if there is a reasonable doubt in your minds thereof, you will resolve that doubt in his favor and acquit him."

And followed the same by instruction No. 15, which is as follows:

"You are further instructed that when the taking of a life is sought to be justified on the grounds of self-defense it is not incumbent upon the accused to satisfy the jury that the killing was justifiable, but if the evidence on that question is sufficient to raise a reasonable doubt in the minds of the jury as to whether the defendant was justifiable, then the defendant is entitled to an acquittal, and you should so say by your verdict."

As applied to the facts disclosed by the record, these instructions fully cover the issues submitted in the case, and there is no prejudicial error reasonably apparent.

The next assignment urged in the brief is based upon the proposition that the court permitted the jury to separate before they had been impaneled and sworn and accepted in the trial of the case. Section 5899, Rev. Laws 1910, provides:

"The jurors sworn to try an indictment or information, may, at any time before the submission of the cause

to the jury, in the discretion of the court, be permitted to separate, or to be kept in charge of proper officers. The officers must be sworn to keep the jurors together until the next meeting of the court, to suffer no person to speak to or communicate with them, nor to do so themselves, on any subject connected with the trial, and to return them into court at the next meeting thereof."

The record does not disclose that counsel for the plaintiff in error asked the court to put the jury in charge of the bailiff at all times; nor does the record indicate that counsel made any complaint to the court at any time that there was any unfairness likely to result to the plaintiff in error on account of the separation of the jury before the cause was submitted. They simply reserved an exception to the order of the court permitting the jury to separate. There is no doubt but that the court would have placed the jury in charge of a sworn bailiff and kept them together if counsel had suggested the likelihood of any prejudicial results to the rights of his client.

It is the duty of counsel to call the atention of the court to reasons why a separation should not be permitted if there is any reason why it should not be permitted. Unless this is done, it will be presumed that the trial court properly exercised the judicial discretion vested in him as provided by explicit statutory law. Of course a different state of the case would be presented should a record disclose conduct on the part of any juror, any witness, or any individual, which is calculated to influence any member of a panel selected, but in this record there is nothing to indicate that anything irregular occurred, and no complaint on this score was made. This proposition has been discussed in this jurisdiction in

many cases. *Bilton v. Territory,* 1 Okla. Cr. 566, 99 Pac. 163; *Sample v. State,* 3 Okla. Cr. 432, 106 Pac. 557; *Chance v. State,* 5 Okla. Cr. 194, 113 Pac. 996; *Selstrom v. State,* 7 Okla. Cr. 345, 123 Pac. 557; *Burns v. State,* 8 Okla. Cr. 554, 129 Pac. 657; *Weatherholt v. State,* 9 Okla. Cr. 161, 131 Pac. 185, and numerous others.

It has been uniformly held by this court and its predecessor that in felony cases before a case is finally submitted it is within the discretion of the trial court to permit the jury to separate. There is no doubt but that the trial court should exercise sound judicial discretion in a capital case by granting the request of either party to place the jury in charge of a sworn officer during the progress of the trial. This must be done after the case is submitted to the jury. The presumption of law is that the courts and the juries perform their duty in accordance with the oaths which they have taken, and that presumption is only overcome by proof to the contrary. It is incumbent upon the defendant who complains of the separation of the jury before the case is finally submitted to affirmatively establish that by reason of the separation he was denied a fair and impartial trial; that his substantial rights were prejudiced thereby. In the case at bar the record is silent on this point. It is clear that the lawmaking power of this state intended that the mere separation of the jury during the numerous and necessary adjournments incidental to a criminal trial should not result in delaying or defeating the ends of justice when there is not the slightest presumption, or even probability, that injustice resulted. The statutes above set forth and the opinions of this court construing the same amply safeguard the purity of jury trials. When the separation of a jury is ob-

jectionable, counsel should apply to the court for an order placing the jury in charge of a bailiff setting forth valid reasons therefor, and if the order is denied, the question arising thereon would present a different phase from that here presented.

The only other error assigned which is entitled to consideration is based upon the proposition that the court erred in overruling the defendant's challenge for cause to three jurors who stated in their *voir dire* examination that they had formed opinions as to the guilt or innocence of the defendant from reading newspapers and from common rumor. It appears that the jurors in question had heard the case discussed, and that they had read newspaper accounts of the homicide; that they had not discussed the case with any one known to be a witness; that from the time they heard of the purported facts up to the time they were examined on their *voir dire*, they had entertained an opinion as to the guilt or innocence of the defendant; that the information they got was all rumor or talk of the community. Each one said that upon hearing the testimony he could and would decide the cause upon its merits fairly and impartially without regard to any opinion that he might have previously formed. Counsel in their examinations failed to draw out any suggestions that the jurors had formed opinions hostile to the interests of their client, or that any of them maintained at the time of the examination, or any time prior thereto, any ill will or hostility towards him. There is nothing to indicate by word or suggestion of any character the leaning of any of the jurors towards the side of the state or that of the defense. Section 5861, Rev. Laws 1910, provides as follows:

"In a challenge for implied bias, one or more of the causes stated in the second preceding section must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of the third preceding section must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered upon the minutes of the court."

This statute exists in New York, California, and a number of other states. It has been considered and construed in all of these states, as well as our own, in a long line of decisions. As far back as the Bradford Case in 2 Okla. 230, 37 Pac. 1062, the Supreme Court of Oklahoma Territory, discussing this provision, said:

"Under this section the court must be satisfied that the juror will act fairly and impartially, and in passing upon this question he must act judicially on the facts before him, and the conduct and appearance of the juror; his manner and apparent candor or impartiality are all to be considered by the court together with his actions in determining his fitness as a juror. * * * A very large discretion is vested in the court, in determining the competency and qualifications of jurors, and its action should never be disturbed by an appellate court, unless an abuse of such discretion is clearly apparent."

In *Huntley v. Territory*, 7 Okla. 66, 54 Pac. 316, the same statute was considered by the territorial court, and in the opinion it is said:

"The information and expression of an opinion is not alone the test of a juror's competency, but the na-

ture of the opinion may be inquired into, and, if found to be only a transitory inclination of mind, it is not a disqualifying opinion. To work a disqualification, there must be an abiding bias in the mind, caused by substantial facts in the case, in the existence of which the juror believes; an opinion upon the merits of the case upon the guilt or innocence of the accused of the charge laid in the indictment, upon the evidence substantially as expected to be presented on trial."

This court in the case of *Johnson v. State,* 1 Okla. Cr. 344, 97 Pac. 1068, 18 Ann. Cas. 300, considered the same provision, and in that opinion said:

"The trial court should resolve all doubts upon this matter in favor of the defendant. Upon the other hand, when no personal, class, or race bias or prejudice appears to exist in the mind of the juror against the defendant, but it does appear that from rumor, or reading the public press, or from notoriety, the juror has an opinion as to the guilt of the defendant, but that such opinion will not combat the testimony or resist its force, and the court is satisfied that the juror can and will lay this opinion aside, and base his verdict alone upon the testimony of the witnesses and the instructions of the court, then the juror is competent. To our minds this is the only rational construction which can be placed upon our statute."

In *Jones v. State,* 8 Okla. Cr. 582, 129 Pac. 449, we discussed the same proposition, and among other things said:

"Two of the jurors, when examined on their *voir dire,* did state that they had received impressions about the case from what they had heard, but that they had not talked to any witnesses in the case; that what they had heard was a mere matter of rumor and would not in any manner influence them in considering the evidence; that they could and would, if taken on the jury, disregard all such impressions and be governed alone

by the testimony of the witnesses and the charge of the court in making up their verdict. Before a juror is disqualified on account of impressions he may have with reference to a case, it must appear that he has such an opinion as will combat the evidence and resist its force."

In *Gentry v. State,* 11 Okla. Cr. 355, 146 Pac. 719, the same provision was considered, and in that opinion we said:

"Under our statute, the mere expression of an opinion by a juror in common conversation, without anything to show ill will, hostility, or a fixed determination of belief, is not a legal ground of challenge for cause. In order to disqualify the juror there must be 'the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging.' Section 5858, Rev. Laws 1910. The issue raised upon a challenge for cause to a juror in a criminal case, on the ground that he had formed an opinion founded upon rumor, statements in public journals, or common notoriety, and upon which he has expressed an opinion, is one of mixed law and fact; and the finding of the trial court upon the issue ought not to be set aside by a reviewing court, unless it appears that upon the evidence the trial court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial. *Ex parte Spies,* 123 U. S. 131 [8 Sup. Ct. 21, 22, 31 L. Ed. 80]; *Holt v. U. S.,* 218 U. S. 245 [31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138]. * * * The increased facilities, through the press, of spreading stories of crime as items of news, especially among the more intelligent classes, makes it difficult to lay down a fixed rule which would disqualify persons who formed their opinions from newspaper reports, or common report and rumor, unless it be of that character which impairs the impartiality of the juror by engender-

ing a bias or prejudice which is fixed, and would require evidence to remove. Under the provisions of the statute the competency of the juror is a question of fact to be determined by the court. Before the court can so determine, it must be shown by an examination of the juror, upon his *voir dire*, not only that his opinion was formed solely in the manner stated, but, in addition to this, the juror must swear unequivocally that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence. * * * An examination of the testimony of these jurors, given on *voir dire*, shows conclusively that the opinions which they formed, and that one juror says he may have expressed, were founded upon the reports which they had read in the newspapers. Intelligent men take newspaper accounts as current news, liable to qualification, explanation, or contradiction, and, when qualified, explained, or contradicted, they change their opinions or belief accordingly as a matter of course. The opinions of the jurors here were such opinions merely as intelligent men almost irresistibly form from reading newspaper accounts of crime, relying upon the truthfulness of the published accounts, which are always subject to be changed and altered by contradictory accounts. Such opinions rarely disqualify intelligent men from fairly considering the evidence given at a trial and rendering an impartial verdict thereon when called upon to act as jurors. Nine-tenths of the intelligent taxpayers of the county, where a homicide has taken place, and the facts and the circumstances attending it have been published in the newspapers, would be disqualified as jurors, if the objections raised in this case were well founded. All of them would read the accounts or hear the facts detailed by some one who had read them, and most of them would form just such opinions, or get just such impressions as the jurors had in this case."

Counsel for plaintiff in error rely on the cases of *Turner v. State*, 4 Okla. Cr. 165, 111 Pac. 988, *Scribner*

v. State, 3 Okla. Cr. 605, 108 Pac. 422, 35 L. R. A. (N. S.) 985, and Tegeler v. State, 9 Okla. Cr. 149, 130 Pac. 1164. The proposition presented by the case at bar is not identical with that determined in these cases. The latter three were reversed because certain jurors were retained over the objection of the defendant.

In the Turner Case, Juror Blackburn said that he had no reason to doubt the newspaper accounts that he had read, that he believed those accounts were true, and that in his opinion the deceased was murdered, and that he believed the defendant was guilty. In the case at bar no such statement was made by any juror. If there had been, this cause would be reversed. In the Scribner Case, Juror McKinney stated that he could not give the defendant the same fair trial that he could have given if he had not heard of the case. No such statement as this was made by any of the jurors impaneled in the case at bar. They all said that they could give a fair and impartial trial, and would do so. In the Tegeler Case, Juror Johns, who acted as foreman of the jury that convicted Tegeler, stated to the court that he had formed an opinion as to the guilt of Tegeler; that he was present in the courtroom at a former trial of the case and heard testimony introduced at that trial; that he probably had talked to some of the witnesses in the case; that he had talked to other parties who had detailed the evidence, and that he had read detailed accounts of the homicide and of the testimony as published in the Oklahoma City newspapers; that at the time of his examination he stood on one side of the case, and that he had in his mind a fixed opinion as to the guilt of Tegeler and that it would take strong evidence to remove it. When asked as to whether he had any doubt about that, he emphatically replied,

"None in the world." The record in that case further shows that the opinion of this juror was that Tegeler was guilty. In the case at bar there is no testimony that even approaches these conditions. The doctrine of these latter opinions is just as sound and is just as permanently fixed in the jurisprudence of this state as the doctrine in the Bradford Case, followed down to and including the Gentry Case.

Finding no error in the record prejudicial to the substantial rights of the plaintiff in error, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.