# JEFF ARMSTRONG v. STATE.

No. A-9125.   May 14, 1937.
(68 Pac. [2d] 114.)

R. A. Wilkerson, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and T. L. Marteney, Co. Atty., for the State.

BAREFOOT, J.   When this case was called for trial, the county attorney read a copy of the original information filed in this case to the jury, and after reading the same, made his opening statement.   It afterwards developed that the information which he read was not the "amended information" which had been filed and on which the defendant was being prosecuted, and was not the information that had been served on the defendant and to which he had plead on being arraigned.   After some preliminary statements by counsel and the court, the "amended information" was found in one of the drawers of a table in the courtroom.   The court then permitted the county attorney to withdraw the original copy of the information, which had been read, and to read the "amended information," and again make his opening statement to the jury.   This is assigned as error by the defendant.   We do not think so.

Nothing is shown by this action of the court which would in any way prejudice the rights of the defendant, nor prevent him from having a fair and impartial trial, as suggested in the brief of defendant.

The defendant was charged jointly with Earnest Tennyson, and others, with the crime of robbery with firearms, in Mayes county, on the early morning of Saturday, January 12, 1935.   He was charged with the rob-

bery of a filling station and a small cafe in connection therewith, in the town of Salina, Mayes county, and with the taking of $23 from the cash register and taking away four slot machines. He was granted a severance, was tried, convicted, and sentenced to serve a term of 25 years in the penitentiary.

In the little town of Salina, Mayes county, Joe Lewis owned a filling station and cafe in connection therewith. A 19-year-old boy by the name of Percy Bolinger was employed by him to run this place from 7 p. m. until 7 a. m. About 2 a. m. on the morning of January 12, 1935, eight men came into the cafe and ordered coffee. The names of these parties were Earnest Tennyson, Ray Anderson, Norman Hoch, Howard Bridwell, Cap Ellis, Jack Miller, Bill Meyers, and Blue Culver. The defendant, Jeff Armstrong, was not shown to have been present when these parties came. They ordered coffee, and while waiting for it to be brought to them they began playing the slot machines and began tilting them in such manner that caused Percy Bolinger to call the proprietor over the telephone. He afterwards came down, but the men had left. Before leaving one of the men had the young man change a bill which he could not change from the cash register and he went into a back room to get the money to change this bill. Between 4 and 4:30 a. m. upon the same morning, young Bolinger heard a noise and, thinking it was some one who wanted gas, opened the door, and as he did so some one shoved a gun into his side and commanded him to "stick them up," and then to lie down on the floor with his face down. One of the men, whom he afterwards identified as the defendant, struck him on the head five times with his gun. The two men rifled the cash register, taking about $23.71 and also taking the four slot machines. One of the robbers demanded of young Bolinger: "God

damn you, tell me where the rest of that money is." And he told him there wasn't any more, and the other party said: "Don't kill the boy." And as they started to leave one of them said: "God damn you, lay there 20 minutes or I will kill you." On the Saturday following, the defendant and Earnest Tennyson were arrested at the home of Earnest Collins, in Claremore. They were carried to Pryor and put in the Mayes county jail. Cap Ellis, Jack Miller, Bill Meyers, Blue Culver, Ray Anderson, Norman Hoch, and Howard Bridwell, being the same parties who were with Earnest Tennyson, and had been at the cafe which was robbed during the early morning of January 12th, were also arrested and placed in jail. Young Bolinger, on Monday or Tuesday, went to the jail with his father and Joe Lewis, the proprietor of the filling station and cafe, and the defendant and the other parties were brought out of their cells for the purpose of identification. The witness looked at them and positively identified the defendant, Jeff Armstrong, as being the one who demanded of him to "stick them up," and as to being one of the parties who robbed the cafe between 4:30 and 5 o'clock on the morning of January 12, 1935, and also being the party who struck him with the gun and who told him to lay with his face down for 20 minutes or he would kill him.

The defendant was also identified by a witness by the name of Howard King, who testified that he resided in the town of Salina; that about 4 or 4:30 a. m. on the morning of Saturday, January 12, 1935, the defendant with another person came to his home in a car; that he was trying to buy whisky; and that he came in the room where he was and he positively identified him.

Ruby King, his wife, also testified corroborating her husband, and positively identified the defendant as com-

ing to her home on this occasion and asking her husband for whisky. Both she and her husband told of having been previously convicted of a violation of the prohibition laws, and of having served sentences therefor.

The defendant was also identified by a witness named Cecil Jameson. He testified that he lived in Salina, Okla., and was there on the 11th and 12th of January, 1935. He testified that he knew Jeff Armstrong when he saw him, and that he saw him about 12 o'clock on the night of January 11th; that he saw the defendant and some one with him in a car in the town of Salina; that the defendant was standing by the side of a car near the hotel; and that he passed within ten or fifteen feet of him.

The defendant testified in his own behalf and offered 16 witnesses who testified to different facts tending to substantiate his alibi in this case. Many of these witnesses were relatives of his, and many of them had previous records of convictions for violation of the prohibition laws. The defendant and these witnesses testified that the defendant was present at a dance at the home of Dennis Jones, in Claremore, Okla., on Friday night and early Saturday morning, January 11 and 12, 1935; that he went to this dance in the early part of Friday night and remained there until the dance was over something like 1 o'clock Saturday morning; that by this time he was "pretty drunk,' and that a boy by the name of Lawrence Pullman took him to the home of Palmer Smith and put him to bed; that he stayed all night at Palmer Smith's, got up about daylight next morning and went to the home of Earnest Collins in Claremore, and that his codefendant Earnest Tennyson was there. They remained there until they were arrested on this charge on Saturday morning. He denies having been in the town of Salina

on the night of the robbery, or of in any way participating therein. That Salina is 28 miles from Claremore.

It will thus be noted that there was a direct conflict in the testimony of the state and the defendant as to his whereabouts on Friday night, January 11th, and early Saturday morning, January 12th. From the above statements it is useless to further point out these differences. The jury saw the witnesses, heard them testify, and observed their demeanor upon the witness stand. Under these circumstances, this court has often held that where there is any evidence which supports the verdict of the jury it will not be set aside. This is wholly a matter for the jury to determine and not for the court. Birdwell v. State, 22 Okla. Cr. 184, 210 Pac. 558; Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Odie Vice v. State, 54 Okla. Cr. 405, 22 Pac. (2d) 1039; Horn v. State, 13 Okla. Cr. 354, 164 Pac. 683.

It is next contended that the court erred in failing to sustain the motion for new trial on the ground of newly discovered evidence. This contention is based upon the affidavit of defendant in his motion for new trial to the effect that his codefendant, Earnest Tennyson, who had been in jail with him up to the time of his trial, and who testified as a witness for the defendant, was after the trial of defendant permitted to withdraw his plea of not guilty and enter a plea of guilty, and on the recommendation of the county attorney was given a sentence by the court of five years in the penitentiary, and that since his trial he had talked with the said Earnest Tennyson, and that the said Tennyson had told him that he and another party, whose name was unknown to defendant, had committed the robbery, detailing to him the planning of same in Claremore on Friday night, and of the going to Salina in the early morning hours of Saturday

and committing the robbery, and after leaving there of dividing the money, and the finding of $120 in the slot machines, and after dividing the same throwing the machines into Lake Cherokee, and returning to Claremore, also stating that his co-defendant absolved him of participating in the commission of the robbery.

We do not think the court abused its discretion in overruling the motion for a new trial in this case. It will be noted that the defendant does not even attach the affidavit of the witness Earnest Tennyson to his motion. He makes the affidavit himself purporting to set out what Tennyson had told him. From the time he was arrested to the time of his trial he had been in jail with the witness and had used him as a witness in his defense at the trial. There is nothing to show that due diligence was used by the defendant to find out what the testimony of the witness Tennyson would be. It looks like this witness, after hearing of the verdict against the defendant and the number of years that had been given him, decided it would be best for him to enter his plea of guilty and make such terms as he could with the county attorney. The sentence which he received justifies this assumption. The court may have come to the conclusion that the witness Tennyson was seeking to take the blame after he had received his sentence and thereby secure relief for the defendant.

By many decisions of this court it has been held that the granting of a new trial by reason of newly discovered evidence is within the sound discretion of the trial court and unless this discretion is abused it will not be set aside. Horn v. State, 13 Okla. Cr. 354, 164 Pac. 683; Peters et al. v. State, 35 Okla. Cr. 367, 250 Pac. 1032; Newman v. State, 35 Okla. Cr. 296, 250 Pac. 554; Odie

Vice v. State, 54 Okla. Cr. 405, 22 Pac. (2d) 1039; Calloway v. State, 38 Okla. Cr. 418, 262 Pac. 696.

We are of the opinion that the motion for a new trial wholly fails to show due diligence on the part of the defendant as contemplated by the statute of this state. See section 3120, O. S. 1931 (22 Okla. St. Ann. § 952); 16 C. J. pp. 1181,1183, 1187, §§ 2710, 2713; Lawson v. State, 36 Okla. Cr. 349, 254 Pac. 110; Ruth Ball v. State, 47 Okla. Cr. 145, 286 Pac. 808; Harper v. State, 7 Okla. Cr. 581, 124 Pac. 1116; Johnson v. State, 5 Okla. Cr. 1, 112 Pac. 760; Perry et al. v. People, 38 Colo. 23, 87 Pac. 796; Hurst v. Territory, 16 Okla. 600, 86 Pac. 280.

We have carefully examined the record in this case and find that after the jury had found the defendant guilty and assessed his punishment at 25 years in the penitentiary, his codefendant, Earnest Tennyson, was permitted to withdraw his plea of not guilty and enter a plea of guilty, and on the recommendation of the county attorney, was given a sentence of only five years in the penitentiary. We can see no good reason for such distinction between the punishment of these parties when both were equally guilty. The only distinction is that the witness Bolinger testified that he was struck on the head by the defendant five times. This distinction, and the fact that the state was permitted to prove all the facts and circumstances surrounding the coming of the seven men, including the codefendant Tennyson, to the place of the robbery during the early morning hours of Saturday, January 12th, must have influenced the jury in giving the defendant this penalty. It is admitted by the state that the defendant, Jeff Armstrong, was not present at that time, or at least was not seen by any one. While we do not think, in view of all the evidence, that the introduction of same was sufficient error to reverse this case, we do

believe that under all the circumstances, taking into consideration the fact that his codefendant was given only a sentence of five years, the ends of justice would be met by modifying the judgment and sentence to ten years.

It is therefore ordered that the judgment of the district court of Mayes county be modified and affirmed as above stated.

DAVENPORT, P. J., and DOYLE, J., concur.