**Wilma FOX, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12648.**

Criminal Court of Appeals of Oklahoma.

Nov. 5, 1958.

John W. Tillman, Fred A. Tillman, Don Hampton, Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

This is a second appeal of Wilma Fox, defendant appellant, from a conviction in the county court of Osage County of the charge of driving a motor vehicle while under the influence of intoxicating liquor. See Fox v. State, Okl.Cr., 321 P.2d 445. She was sentenced to pay a fine of $50 and to

serve ten days imprisonment in the county jail.

Defendant fails to argue her case under specific headings as required by the rules of this court, but it may be said does argue her case under three divisions.

■ It is first argued that the conduct of the jury foreman, Mr. Flatt, entitles defendant to a new trial. The only thing disclosed by the record in this connection is paragraph 4 of the motion for new trial, alleging:

"Misconduct on the part of the jury foreman, Mr. Flatt, in commenting in open court after the conclusion of the trial, in the presence of the other jurors, on the evidence in the case, and the court after said comments were made failed to admonish the jury to disregard said comments on the evidence by the jury foreman."

Counsel states in brief that the court reporter was absent from the court room at a time when, after the jury had been deliberating for over one hour, the court called the jurors to the court room, and hence no record was made of what Mr. Flatt said to the court. Nowhere in the record or in defendant's brief for that matter, is it set forth what Mr. Flatt may have said.

The fact that the reporter was not present is no excuse. The reporter could have been found and counsel could in the absence of the jury dictated into the record a summary of the remarks of the jury foreman, which remarks were apparently addressed to the court, and the court could have made a finding of the gist of the remarks. But counsel did not do this, and in fact failed to dictate any exceptions into the record, or afford the court an opportunity to dictate into the record what actually happened, and make a ruling. If the remarks were such as to entitle the defendant to a mistrial and a mistrial had been asked for, it is assumed that the court would have granted same.

Then, at time of hearing of motion for new trial, no attempt was made to introduce proof of what Mr. Flatt might have said that would have entitled defendant to a new trial. Where the record is silent as to matters asserted to have taken place, except for allegations contained in appellant's brief, such allegations would not be considered.

From what has been said, the case of Montgomery v. State, 19 Okl.Cr. 224, 199 P. 222, is not applicable to the factual situation here presented. The record before this court does not disclose error in the respect contended for in the specifications quoted.

■ It is next argued by the defendant:

"The next error complained of is the misconduct of the assistant county attorney in asking the defendant if she had ever been charged with a criminal offense and if she had forfeited a bond for being drunk and for reckless driving, which questions were asked by the assistant county attorney solely to prejudice the defendant before the jury."

The case of Corliss v. State, 12 Okl.Cr. 526, 159 P. 1015, is cited.

The record does not justify nor support the statement by counsel. The defendant was asked: "Mrs. Fox, I will ask you if it isn't a fact that on the 11th day of May, 1956, in the city court here in Pawhuska, you forfeited a bond on a drunk charge?" Counsel objected to the question on the ground that its only purpose was to impeach the witness. The court properly overruled the objection and the defendant admitted that she had forfeited the bond, but claimed that she had followed the advice of the judge in doing so.

We find no place in the record where the assistant county attorney ever asked defendant whether or not she had ever been "charged" with a criminal offense, but the query was as to whether she had forfeited a bond on a "drunk charge" and also "forfeited a bond for reckless driving."

As to the purpose for which the court permitted the questions, he instructed the jury, and properly so, as follows:

"You are further instructed that the court has permitted evidence to be introduced showing that certain witnesses have been previously arrested and convicted for crimes other than the one charged in the information in this case, or have forfeited bonds in criminal cases. This evidence is admissible only for the purpose of affecting their credibility as witnesses."

■ The question has been before this court a number of times and we have held adversely to the contention here advanced, and have said that where police court bond forfeitures are deliberately made, in cases involving unlawful possession of intoxicating liquor, they are tantamount to a plea of guilty and should be so regarded. See LeBlanc v. State, 95 Okl.Cr. 280, 245 P.2d 134; Storer v. State, 84 Okl.Cr. 176, 180 P.2d 202, 207; ·Chambless v. State, 90 Okl.Cr. 423, 214 P.2d 947; and Wheatley v. State, 77 Okl.Cr. 122, 139 P.2d 809.

■ The third and final proposition advanced by the defendant has to do with the sufficiency of the evidence on the part of the State to support conviction. It is asserted, and correctly so, that there was a great conflict between the evidence of the three witnesses testifying for the State and that of the defendant, and some from witnesses she offered to support her contention that she was not under the influence of intoxicating liquor the night of her arrest.

Emil Hunt testified for the State and said that he had been a member of the State Highway Patrol for 17 years and lived in Pawhuska. That on October 3, 1956 Trooper Hugh Enos was with him patrolling the highways in a patrol car; that it was about 12:30 a. m. and about two miles south of Field's Corner on State Highway 18 and that officer Enos was driving the patrol car north at a speed of 45 to 50 miles per hour when they noticed a car approaching from the rear and that Mr. Enos drove the patrol car off the shoulder; that the car passed at a speed of about 60 miles an hour ·and they then followed the car; that the car, eventually found to be driven by the defendant, was being driven from left to right on the highway and that when she got to the intersection of Highways 18 and 60 defendant ran the stop sign and turned to her right on U. S. Highway 60; the officers then turned on the red lights and siren and followed her for about a mile attempting to get her to stop. She was stopped at the Shidler "Y" near the middle of the road, and officer Hunt placed defendant under arrest, telling her that it was for being under the influence of intoxicating liquor. He said defendant's breath smelled strongly of alcohol, that her speech was incoherent and her eyes blood-shot. He said that she could not stand erect and that he led defendant to the patrol car and went back to drive her Buick car in and found that defendant had vomited on the inside of the car, and that he had to clean it up with paper before he could drive it. He further said that when he placed defendant under arrest that she cursed him, applying vile epithets not necessary to be here repeated. He said that when he got to the jail at Pawhuska he and trooper Enos took the defendant and delivered her to the county jailer, Mr. Trenary, that defendant was still cursing and crying.

Witness denied on re-direct examination that defendant ever complained of being sick or ill.

Officer Hugh Enos testified substantially as officer Hunt. He said defendant's car passed the patrol car he was driving and was being driven at a speed of 60 miles per hour, which, of course, was in excess of the speed limit at night. He said: "And it would cross over the center line to the left, then weave back to the right, and it didn't stop at the stop sign at the intersection of State Highway 18 and U. S. 60, and it turned east at that point and travelled east on U. S. 60." He said that he attempted to get the Buick car driven by defendant stopped. Said he:

"Yes. I would start to pull up to the left side of the car with the red light directly on the operator and the car would weave over to the left and I would have to fall back in behind it. I would think the driver was going to stop and she wouldn't; then I would catch up and pull up to the left side again. I would also pull the front of my car up to about her left rear fender."

Witness further testified that after defendant's car was stopped that she staggered, that she had a heavy alcoholic breath and cursed him and in his opinion was definitely drunk.

It was shown that Frank Trenary, who had previously testified, was deceased, and the parties stipulated and agreed that his prior testimony might be read.

Mr. Trenary testified that he was jailer at the Osage County jail on October 3, 1956 and that the defendant Wilma Fox was booked in at the jail by officers Hunt and Enos. He testified that as jailer he had seen many intoxicated persons, and gave as his opinion that when defendant was placed in jail that she had been drinking. He based his opinion, he said, on the fact that he smelled liquor on her, and that she was cursing and crying.

Counsel fairly summarizes the defendant's testimony as follows:

"That she had driven from Shidler to Fairfax; that she had drunk some coffee at Fairfax and had been served by a waitress there by the name of Georgia Vining. She further testified that she had been recently divorced from her husband and had recently lost her father; that she had been living on sleeping tablets and been under the doctor's care. She testified that she had absolutely nothing to drink on October 3, 1956; that she noticed the Highway Patrol; that she vomited; that they went around and stopped on the right side of the road; that she was crying and had the air conditioner and radio on. She testified she saw the stop sign on Highway 60, and that she put her brakes on but didn't completely stop, didn't realize they were behind her until she started to turn north on Highway 18. She testified further that Hunt grabbed the door and opened it quick and said 'get out'. She said, 'what for', and he said, 'you are drunk', and she said, 'I am not drunk, but I am sick.' She testified that she regretted having the argument with the Highway Patrol. She further testified that she knew neither of the Highway Patrol. She further testified that Mr. Trenary said he didn't think she was drunk. She testified that she had control of all of her faculties at the time she was driving the car, that she knew what she was doing. That she had been under the doctor's care off and on for two or three months before this occurrence; that she had been extremely nervous on account of her father. She further testified that she was living in Shidler, Oklahoma. She testified that no whiskey or alcohol of any kind was in the car. She testified that she vomited on the steering wheel and on her lap. On cross examination she testified that the reason the car was wobbling as it did was because she was crying and worried. She reiterated that she had only coffee to drink."

Dr. Harold Brooks of Shidler testified that he was an osteopathic physician and surgeon and had treated the defendant, Wilma Fox, during the months of September and October, 1956; that he diagnosed her case as a psychosomatic disturbance of the gastro-intestinal trouble and hypertensive nerves and that defendant was very excitable and that he had given her some drumine and chloro-hydrate and some phenobarbital. He said that he had the history of this vomiting and that he had treated her for this during late September and October. He also treated her on October 2, 1956. He thought that possibly the odor of alcohol could have been given off

by the chloro-hydrate and that the vomiting might have a tendency to give a false conception of alcohol on the breath. He said that an overdose could bring a blurring of the vision or impair vision. He had instructed defendant not to take any alcoholic beverages, and particularly when taking chloro-hydrate. He said that defendant's hypertensive condition, or nervous condition, had possibly caused her to be extremely temperamental.

By agreement, Georgia Vining's previous testimony was read into the record. She said that she was employed at Jump's Roller Rink in Fairfax on October 3, 1956; that she remembered seeing the defendant Wilma Fox, that she came into the establishment some time around 11:30 P.M.; that the only thing she served her to drink was coffee. She said that Jump's Roller Rink did not serve beer; that defendant drank about a cup and a half of coffee. Witness said that she talked to defendant and did not smell alcohol on her breath; that her eyes were not bleary and defendant had mentioned that she had been sick. She said that defendant did not stagger and said she had seen lots of drunk people and in her opinion defendant was not drunk at the time she was in the place where witness worked; that on cross-examination she said that she had never seen defendant before the night in question, and that she was not related to her.

From the above counsel for the defendant is correct in asserting that there was conflict in the evidence of the State and the defendant. However, the jury picked from the citizenship of the county where the offense is alleged to have been committed had the opportunity of observing the witnesses, their demeanor, interest in the case, and weighing the testimony. In the case of Washington v. State, Okl. Cr., 293 P.2d 370, this court said:

"The jury is the sole judge of the facts involving the guilt or innocence of the accused and when the record discloses facts, even though conflicting, which are sufficient to warrant the verdict the same will be sustained on appeal."

See also Ryan v. State, 97 Okl.Cr. 119, 258 P.2d 1208, and cases cited.

Judgment affirmed.

BRETT, P. J., and NIX, J., concur.